## MICKLES *vs.* HART, sheriff of New-York.

Where a *fi. fa.* is delivered to a deputy sheriff with instructions from the plaintiff to depart from his duty in executing it, (*e. g.* to make a levy, and to do nothing more until further instructions are given,) the deputy ceases to be the servant of the sheriff and becomes the agent of the party, and the sheriff is not answerable for his acts or defaults.

Where, after such instructions, the plaintiff in the execution wishes to change that relation and restore the liability of the sheriff, he must give notice to the sheriff himself. Fresh instructions to the deputy will not be sufficient.

Whether the sheriff would be liable in respect to such process even after notice given directly to him, *quere. Per* BRONSON, C. J.

The plaintiff's attorney delivered a *fi. fa.* to a deputy sheriff with written directions to make a levy, and take no other steps until further instructions; and after five months had elapsed, directed the deputy to sell; in *case* against the sheriff for not collecting the money, *held*, that he was not answerable even in respect to property levied on by the deputy, which was carried off after the instructions to sell.

Where, in such a case, the sheriff is in default for not returning the *fi. fa.* pursuant to notice, only nominal damages can be recovered against him.

ACTION on the case against the sheriff for not collecting and returning a writ of *fieri facias* in favor of the plaintiff against one Whitney, for $213,22. The cause was tried before KENT, C. Judge, at the New-York circuit in November, 1843. The *fi. fa.* was issued April, 8, 1842. It was delivered to the under sheriff at the sheriff's office, with a letter of instructions from the plaintiff's attorney wafered to the writ. After directing a levy on all the personal property of the debtor liable to execution, the letter proceeds: "Sheriff will take no further steps after levy until further instructions from me." The writ, with the letter, was delivered to a deputy of the name of Meeker, who within a few days called on the plaintiff's attorney, when the same instructions were repeated to the deputy verbally; and the deputy levied on the personal property of Whitney, consisting of household furniture. Thus the matter rested until the 8th of September, when the plaintiff's attorney left a note for the deputy at the sheriff's office, requesting the deputy to proceed and sell the property on which he had levied. This note soon afterwards reached the deputy, and he was several times request-

ed by the attorney to proceed and sell.   On the 12th of December following it was discovered that Whitney had removed, and all his property was gone.   On the 17th of December the sheriff was served with notice of a rule to return the writ; and on the 11th of January, 1843, this suit was commenced.   The judge charged the jury, that if between the issuing of the execution in April, and the 8th of September, when the deputy was directed to proceed, any loss ensued, the sheriff was not responsible : but that if any loss accrued to the plaintiff after the 8th of September, the sheriff was responsible.   Verdict for plaintiff $61,67.   The defendant moves for a new trial on a case.

*N. B. Blunt*, for the defendant.   The plaintiff, by the conduct of his attorney, released the defendant from any liability in his official capacity.   By his instructions to the deputy, he made him his special agent.   (*Gorham* v. *Gale, 7 Cowen*, 739 ; 11 *Mass. R.* 177.)   The effect of these instructions was to release the sureties of the deputy.

*E. C. Delavan*, for the plaintiff, cited *Gorham* v. *Gale*, (*supra ;*) *Armstrong* v. *Garrow*, (6 *Cowen*, 467 ;) *Corning* v. *Southland*, (3 *Hill*, 554 ;) 2 *Phil. Ev. by Cowen & Hill*, 376 ; *Herkimer County Bank* v. *Brown*, (6 *Hill*, 232.)

*By the Court*, BRONSON, Ch. J.   Meeker, the deputy who held the execution, had both written and verbal directions from the plaintiff's attorney to take no further steps after the levy which was made in April, until he received further instructions from the attorney.   It was not a mere permission to delay a sale if the deputy thought proper to do so.   It amounted to a positive direction to do nothing beyond a levy.   There was not only an indefinite postponement of a sale, but Meeker must have understood that he was released from all obligation to protect the property against waste or removal by the debtor, or any one else.   When the plaintiff instructs the deputy to depart from the line of duty which his process and the law impose upon him, the deputy ceases to be the servant of the sheriff,

and becomes the agent of the party; and the sheriff is no longer answerable for his acts or defaults.

Now when, if ever, did the liability of the sheriff revive? The circuit judge thought the sheriff liable for any loss which happened after Meeker was directed to proceed in September; and as the proof was that the property was removed by the debtor after that time, the jury found a verdict against the sheriff for the value of the goods. I think the charge upon this point was wrong. When the plaintiff instructed Meeker to proceed and sell the property, he was giving directions to his own agent, and not to the sheriff's officer. After the plaintiff had broken up the relation between the deputy and his principal, nothing short of a notice to the sheriff himself could render him again liable for the acts or omissions of the deputy; and whether that would be enough, we are not now called upon to determine. The first thing which was said to the sheriff was on the 17th of December, when he was served with notice of a rule to return the writ. Before that time the property had been carried off by the debtor; and I see no principle on which the sheriff can be charged with its value. He may be in default for not returning the execution pursuant to the notice; but that, under the circumstances of this case, would not entitle the plaintiff to more than nominal damages.

New trial granted.