ALEXANDER McKINLEY *vs.* SIDNEY M. TUCKER, Sheriff, &c.

After the liability of a sheriff had become fixed, by the neglect of his deputy to levy, collect or return an execution within its lifetime, the defendant applied to the plaintiff and obtained his written consent, to be exhibited to the deputy, stating that he would not proceed against the sheriff until the maturity of certain notes which the defendant proposed to leave with the deputy, and the avails of which, if paid at maturity, were to be applied by the deputy to satisfy the execution. *Held* that such consent did not *per se* operate to discharge the liability of the sheriff.

The plaintiff in the execution having expressly refused to take the notes, himself, or to do any act to impair his remedy against the sheriff, it was further *held*, that his written consent to postpone proceedings against the sheriff until the maturity of the notes thus put into the hands of the deputy did not operate as a ratification of the prior neglect of the deputy which created the liability.

Otherwise, *it seems*, if the plaintiff, after a valid levy, had consented to the arrangement, and to a postponement of a sale of the defendant's property in the meantime.

The language of a writing may be interpreted, and its true meaning ascertained, in the light, and by the aid, of the circumstances under which it is made.

ACTION against a sheriff for not collecting or returning an execution. The defense was that the plaintiff gave directions to the deputy holding the execution, with reference thereto, which were complied with by the deputy, who thereby became the agent of the plaintiff, and which released the sheriff from all liability for the acts or neglects of the deputy in not returning the execution.

It appeared before the referee, to whom the action was referred, that the plaintiff recovered a judgment in the Supreme Court against S. Newell Dada and Sidney S. Morrill, on the 20th day March, 1868, for $435.74, and that an execution was issued to the defendant as sheriff of Oswego county, where judgment was docketed, on the 24th of March, 1868, which was on the same day delivered to his deputy, George Folger.

Mr. Dada was sworn on the trial, and produced the execution. He testified that on the 22d day of July, (after

McKinley *v.* Tucker.

the return day of the execution,) he saw the plaintiff, in his hay-field, and arranged with him to let Folger have two notes, made by Howard Allen and indorsed by himself and Willard Johnson, and have the deputy, Folger, hold the execution a further time; the notes, when paid, to apply on the execution. One of the notes was paid to Folger, November 1, 1868, a portion of which Folger paid over to the plaintiff. When he made the arrangement, the plaintiff gave him a writing, in pencil, which read as follows:

"George Folger. Take the two notes, of $100 each, made by Howard and indorsed by Willard Johnson, and hold the same till due; and when paid, apply them on execution against Morrill and Dada, and I will not hurry you on ex.

(Signed)          ALEXANDER McKINLEY."

He further testified, that upon his return to Fulton, the same day, he handed this writing to Folger, the deputy; and also the two notes for $100 each.

The defendant also gave evidence to show that on the 11th of December the plaintiff wrote a letter to Folger, the deputy, requesting him to close up the execution the 1st of January.

The plaintiff was then sworn, and testified as follows: "I am plaintiff in this action. I remember the time when Mr. Dada came to see me about taking some notes. He had some papers with him, he said were notes, and asked me to take them. I said no, I can't accept them, and that I had written to Folger I would not accept the notes. He said Folger said he might say to me, for Folger, that he (Folger) would back the notes if I was not satisfied. I said Folger could take them if he desired. I should look to him for my pay, and would have nothing more to do with Dada. Dada says, let me say to Folger that you will let it rest where it is until those notes become due. I told him I would not do it. I would not make any agreement,

or do anything that would release the sheriff. That I would give no directions concerning it. Dada urged me, and said it was but short time, and the sheriff was already liable to me, and it would make no diference to me, and asked me to let it stand just as it did then. I then said I would let it stand just as it is. He said, just give me a line to Folger, that you will not prosecute till the notes become due, and then he wrote in a memorandum book something of that kind, and I signed it. Dada said it would not affect my right to collect of the sheriff. On the 28th of October, 1868, I saw Folger. I then asked him why he had not collected the execution. Folger first said my attorney had given him time, and finally said he was mistaken; and then said Mr. Briggs said it would make no difference with me. He said I did not want the money, and he thought I would accommodate Dada. I told him I thought the sheriff was liable for delay. Folger said he could take two years to collect it; he was not obliged to collect it in sixty days; but said in a few days, on return of Mr. Dada, who was absent, he would collect and close it up. I asked him about those notes, and whether they were paid or not. At first he was entirely ignorant as to anything about them; he thought he had had such notes, and put them in the bank. I went to the bank with Folger, and they could not be found at the bank. Folger went up to the office and said he had such notes, but handed them to Dada at the time he (Dada) came to see me, on the 22d of July, and had not received them after that. A few days after, I received a check for ninety-five dollars, in a letter, wherein he (Folger) wrote that the other note was not due till December, and that Dada said I had agreed for the balance, besides notes, to wait longer. In December I received another letter saying that the December note had not been paid, but that he (Folger) would pay that himself. I then wrote the letter produced,

of date December 11, 1868." Cross-examined by the defendant, says: "I received the money on the check."

The referee found the following conclusions of law:

1st. That deputy Folger assumed the office of private agent, and held over and delayed the collection of said execution upon the presumed assent of the plaintiff or his attorney until July 22, 1868, when the plaintiff, by the execution and delivery of said writing, and by other circumstances herein before described, made said Folger his (plaintiff's) agent, and adopted and ratified the prior acts of said Folger in the matter of the collection of said execution. To which the plaintiff excepted.

2d. That the defendant was thereby relieved and discharged from all liability arising from the failure to execute or return the said execution. To which the plaintiff excepted.

And he ordered judgment dismissing the plaintiff's complaint. Judgment having been entered for the defendant, the plaintiff made a case, containing his exceptions, and appealed to this court.

*D. Pratt,* for the plaintiff.

This case is distinguished from any reported case I have been able to find. The execution had been running four months after its receipt by the sheriff; no levy had been made, and no money collected; and by lapse of time the sheriff was entirely powerless as to any legal right to enforce the collection; and unless the defendant voluntarily paid, nothing could be made thereon. At the expiration of sixty days after the receipt by the sheriff of the execution, it not having been returned or paid, a cause of action had accrued in favor of the plaintiff against the sheriff for not returning the execution. (3 *Seld.* 550. 21 *N. Y.* 481. 3 *Hill,* 552.) The defense proceeds entirely upon the ground that the plaintiff gave specific directions to the deputy concerning the execution, and thereby re-

McKinley *v.* Tucker.

leased the sheriff from all liability in not returning the execution as he was commanded. There is no pretense that the plaintiff gave any direction in regard to the execution until after default in the sheriff to return it as he was commanded, and after the plaintiff's cause of action had accrued against the sheriff.

I. Specific directions by the plaintiff to the deputy must be such as to cause the deputy to commit such acts, which, had he committed them without such directions, the sheriff would be liable to the plaintiff in an action for such acts. (*Godfrey* v. *Gibbons,* 22 *Wend.* 569.)

II. Specific directions must be such an interference as will divest the deputy of his general character and discretion belonging to his office, and substitute him for special deputy for special service. (*Tuttle* v. *Cook,* 15 *Wend.* 274. *Walters* v. *Sykes,* 22 *id.* 566.) The plaintiff may direct the deputy in the matter of the collection of his execution, and the sheriff will be liable if the deputy does not follow his directions, and the giving of such directions will not release the sheriff. (*Sheldon* v. *Payne,* 3 *Seld.* 453. *Root* v. *Wagner,* 30 *N. Y.* 9.) It will be seen that the directions given must be positive, and also imperative, in order to release the sheriff. 1. In the case at bar, the directions were merely permissive, although the paper in pencil mark alone, looks towards a direction, but when connected with explanatory evidence, it is merely a permission. 2. The direction or permission, whichever it may be termed, neither curtailed or enlarged the powers of the deputy as to the collection of the execution; it neither commanded or prevented him from collecting the execution at once if he desired to do so. 3. The notes were not to apply on the execution, and the deputy could have safely held the notes until they became due, and if paid, applied the money on the execution without any directions from the plaintiff; and no liability against the sheriff

would accrue in consequence of such acts, and none of the parties have been affected by the transaction.

No credit was given on account of those notes; if paid the deputy was permitted to apply the money on the execution; if not paid, they were to make nothing for the plaintiff on the execution; they were no security; they were not to be sold as property levied on the execution, and could in no way enure to the benefit of the plaintiff who was already secured by his action against the sheriff.

This seems to dispose of this case with the following exceptions, viz: can a party, having a legal right of action against another party, suspend the remedy and not destroy his right of action, and his right to prosecute after the time for which he suspended?

It is supposed that a party may and has a right to suspend his remedy for a time, definite or indefinite, at his pleasure, and not diminish his right to prosecute, if within the limits of the law, and if so, an assertion by him that he will suspend, certainly will not affect his right of action. I know of no rule to compel a party to prosecute, and there is no consideration for the release of a good cause of action which he has already accrued.

The referee decided this case upon the reasoning of Judge Cowen in *Corning* v. *Southland*, (3 *Hill*, 552,) and held that case to be decisive of this case. In that case there was an adequate levy; in this case there was no levy, and the execution was not secured, or any part of it.

There is no doubt that the plaintiff was willing to be lenient, but we deny that his saying to Dada or Folger he would not prosecute the sheriff till the notes became due amounted to an adoption or ratification of the prior acts of the deputy.

*S. N. Dada,* for the respondent.

The report of the referee, as to the facts of the case, is fully sustained by the evidence. His conclusions of law

McKinley *v.* Tucker.

are correct. The deputy assumed the office of private agent of the plaintiff, and upon the presumed assent of the plaintiff or his attorney, held over and delayed the collection of the execution until July 22, 1868, when the plaintiff giving specific directions to the deputy which were carried out, made the deputy his agent, and adopted and ratified his prior acts, and thereby relieved and discharged the defendant from all liability arising from the failure to execute or return said execution. (*Corning* v. *Southland*, 3 *Hill*, 552. *Gorham* v. *Gale*, 6 *Cowen*, 467, *n. Mickles* v. *Hart*, 1 *Denio*, 548. *Sheldon* v. *Payne*, 3 *Seld.* 458.)

MORGAN, J. The courts have doubtless gone a great way to relieve the sheriff from responsibility for the neglect of his deputy, when the circumstances were such as to authorize the inference that such neglect was occasioned by the improper interference of the plaintiff in the execution. After a levy has been made, almost any interference with the duties of the deputy would operate to relieve the sheriff from liability. But when the deputy, relying upon the defendant in the execution to pay it, and for his special accommodation, has suffered the execution to run out in his hands and the consequent liability of the sheriff has become fixed, it is not perceived how the mere passive acquiescence of the plaintiff in a further delay in order to give time to the deputy and defendant in the execution to make the money, can be said to operate *ipso facto* as a release of the cause of action against the sheriff.

It will be observed, that according to the plaintiff's evidence, which is hardly contradicted or impaired by that of Mr. Dada, he absolutely refused to take the notes or have anything to do with them himself, or to make any agreement or do anything that would relieve the sheriff; but that he was finally prevailed upon to say that he would let the matter stand just as it was until the notes matured.

Mr. Dada wanted a line to the deputy to show that he, (the plaintiff,) would not prosecute till the notes became due, and drew up a note to the sheriff which the plaintiff signed, in which the plaintiff said to the deputy: "You take the notes  *  *  *  and hold till due  *  *  *  and I will not hurry you on execution." If the execution had not already run out, doubtless such a writing would have been fatal to the plaintiff's remedy against the sheriff for not returning it.

The learned referee held as matter of law, that the deputy thereupon assumed the office of private agent, and held over and delayed the collection of said execution upon the presumed assent of the plaintiff or his attorney until July 22, 1863, when the plaintiff by the execution and delivery of said writing, and other circumstances before described, made said Folger (the deputy) his agent, " *and adopted and ratified the prior acts of said Folger* in the matter of the collection of said execution."

If this conclusion is warranted by the writing and other circumstances detailed in the evidence, as a matter of law, it is a conclusion directly against the declared intention of the plaintiff when he signed the writing, and the obvious understanding of all the parties. If, however, we construe the writing in the light of the plaintiff's evidence and by the aid of the circumstances appearing upon the trial, the most the plaintiff would or did agree to, was, that he would not prosecute the sheriff, or in other words, *"hurry the deputy on the execution,"* until it was known whether or not the notes would be paid.

The evidence has satisfied me, that all the parties understood the sheriff's liability had become fixed by the omission of the deputy sheriff to levy or return the execution; and under these circumstances, the plaintiff relying upon his remedy against the sheriff, refused to interfere or promise anything, except that he would forbear to resort to his remedy against the sheriff, until the deputy

McKinley *v.* Tucker.

should have an opportunity of making the money out of the two notes, which the defendant Dada had gotten up for that purpose. If the writing is made to operate in a way to destroy the plaintiff's remedy against the sheriff, then I think he has been evidently overreached, and induced to sign a paper which did not express his intentions. Under the circumstances, I am of the opinion that it will bear a different interpretation; and that the plaintiff only agreed, that if the deputy took the notes, and held them until due, he would in the *meantime* forbear to take his remedy against the sheriff for not returning the execution.

Such an agreement is in no way prejudicial to the sheriff, but rather for his benefit, as well as that of the deputy, who is liable over to the sheriff. It, in legal effect, reserves the right to prosecute the sheriff, and there is no principle of law or morals that would justify the sheriff in taking advantage of it to escape liability.

It may be asked, with great pertinence, what duty the deputy owes to the sheriff or any body else, except the plaintiff, *after* he has suffered an execution to run out in his hands for over two months after the return day, for the accommodation of the defendants in such execution. The law does not impose any further duty upon him, except it be to return the execution, not for the benefit of the sheriff, but to enable the plaintiff to take his remedy against the sheriff.

But here the deputy did not assume a new duty or obligation inconsistent with his official duty; for his official duties were ended, except to return the execution. That duty continued, but he was prevailed upon by the defendant to abstain from its performance a short time longer, to give him an opportunity to pay the execution out of the proceeds of certain notes which he exhibited to the deputy. The deputy, it may be assumed, was fearful that if he waited till the notes matured, before returning the execution he would be ruled to return it, and the sheriff would

be sued. The defendant in the execution, therefore, proposed to see the plaintiff, who was alone interested in hurrying up the deputy, and procure his consent to the delay. The plaintiff was seen accordingly, and was finally prevailed upon to say that he would not proceed against the deputy or sheriff until the notes became due. He therefore writes to the deputy that he would not "hurry" him on the execution until the notes matured. This is the substance of the whole transaction.

There is no solid ground of principle upon which such a promise of the plaintiff to forbear his remedy against the sheriff, for a short time, to give the defendant an opportunity to pay the execution, can be construed into an interference with the official duties of the deputy sheriff, or as an act prejudicial to the sheriff; or as a *ratification* of the *prior delay* of the deputy, which created the liability. On the contrary, the plaintiff, by the very terms of the arrangement, refuses to ratify the *prior delay*, or to abandon his claim against the sheriff.

The cases cited by the respondent's counsel do not lay down any rule inconsistent with this conclusion. In *Gorham* v. *Gale*, (6 *Cowen*, 467,) the deputy, in making sale of the land of the defendant in the execution, acted under the instructions of the creditor, and took a course out of the line of his duty as a public officer, by giving credit and selling the land for less than the execution. In *Corning* v. *Southland*, (3 *Hill*, 552,) the proposal of the plaintiff to the deputy to take a note, was *before the return day ;* yet as it was not got up according to the proposal, the sheriff was held responsible for not returning the execution. In *Mickles* v. *Hart*, (1 *Denio*, 548,) the instructions to the deputy were to make a levy, and do nothing more until further instructions. After four months the plaintiff directed the deputy to sell, which he neglected to do until it was discovered that the property had been removed, and could not be found; and it was *held* that the sheriff

McKinley *v.* Tucker.

was not liable for the default of the deputy in not collecting the execution. In this case, it is clear that the plaintiff had taken the matter into his own hands from the beginning. And in *Sheldon* v. *Payne,* (3 *Seld.* 453,) the deputy refused to follow the plaintiff's instructions. Ruggles, Ch. J., says: " The deputy neither acted in the line of his duty as prescribed by law, nor did he obey the directions, or act within the authority given him by the plaintiff." And it was *held* that the sheriff was liable, as the deputy sheriff did nothing in conformity with the instructions.

None of these cases decide that the sheriff is discharged by the promise of the plaintiff, that he will not take his legal remedy against the deputy or sheriff for a liability already incurred, until a future day, although the object of it is to give the defendant in the execution time to pay it before it is actually returned. Such an arrangement is more for the benefit of the sheriff than the plaintiff in the execution, is humane towards the defendant, and ought not to be discouraged.

The judgment should be reversed.

DOOLITTLE, J., concurred.

MULLIN, J., dissented.

Judgment reversed, and a new trial granted, with costs to abide the event.

[ONONDAGA GENERAL TERM, April 5, 1870. *Mullin, Morgan* and *Doolittle,* Justices.]