ROBERT E. GREGG, Appellant, *v.* JOHN P. MURPHY, Sheriff of Lewis County, Respondent.

*Sheriff—protected by instructions from the party in whose favor process is issued.*

A party in whose favor process is issued may give such directions to the sheriff as will not only excuse the sheriff from his general duty, but bind him to the performance of what is required of him

The evidence in an action brought against a sheriff, to recover damages for his alleged false return, upon an execution in replevin issued to him in favor of the plaintiff—to the effect that he had delivered the property therein mentioned to a third party for the plaintiff, examined and *held*, to render it manifest that the sheriff in all that he did acted in good faith in accordance with directions given him by the plaintiff or the plaintiff's attorney, and consequently to afford protection to the sheriff as matter of law, so that he was entitled to have a verdict directed in his favor. (MERWIN, J., dissenting.)

APPEAL by the plaintiff, Robert E. Gregg, from a judgment of the Supreme Court, entered in the office of the clerk of Lewis

county on the 27th day of December, 1892, upon a verdict in favor of the defendant rendered by direction of the court at the Lewis Circuit.

The action was brought to recover damages for the alleged false return by the defendant, as sheriff of Lewis county, of an execution in an action of replevin in which the present plaintiff was defendant, and one Bronson A. Shead was plaintiff, issued in favor of the present plaintiff, and for the conversion of the property alleged to have been taken under the execution.

The action was commenced July 23, 1892. In the complaint it is alleged that, on the 10th of June, 1891, in an action of replevin in the Supreme Court, brought by one B. A. Shead against the plaintiff in the present action, this plaintiff recovered judgment against Shead for the possession of certain chattels, to wit, one black mare, one pair of bob sleighs, one four-spring wagon, one three-spring wagon, one cutter, two buffalo robes, in case delivery could be had, and if not, then for the value, the sum of $142; that this judgment was duly docketed in Lewis county on the 12th of June, 1891, and on the 25th of July, 1891, an execution thereon in due form was issued and delivered to the defendant, the sheriff of Lewis county; that the defendant, on or about the 25th of July, 1891, under said execution, took possession of said property, then being within his county, and has ever since retained possession of the same, contrary to the direction of the execution; that he has neglected and refused to deliver the same to the plaintiff, though often requested so to do, but has falsely returned upon said execution that he had delivered the same to one W. S. Waterman for the plaintiff; that he has not so delivered the same, or any part thereof; that he has retained the same and converted it to his own use without the authority or consent of plaintiff, and to his damage in the sum of $142, with interest. For that sum judgment is demanded.

In the answer it is, among other things, stated that the defendant, at the request of plaintiff's attorney, authorized and directed Waterman to take the property, and then, by direction of plaintiff's attorney, made the return referred to in the complaint.

The execution in question was received by the defendant on the 23d of July, 1891, and on the twenty-fifth of July he, under it, obtained possession of the property. On the twenty-seventh of

July, he wrote the plaintiff's attorney as follows: "The property is at Austin's that you speak of; I was there and got the same in my possession on the 25th of July. Now, what do you want I should do with the same?"

The defendant lived at Lowville, the attorney lived at Watertown and the property was near Pinckney Corners, which was a considerable distance from each of the other places. The attorney, on the first of August, wrote the defendant that his client was out of the county; that he expected to see him soon and would then write him fully. On the seventh of September, the attorney writes the defendant: "I had a letter from my client, saying that Austin would not give up the property. Did you take it? You wrote me you did. Your execution required you to take it and hold it. Your deputy informed me that you left the horse at Austin's. That is not right. ⁎ ⁎ ⁎ Please write me what you done with the property and where it is, etc., and your bill." To this the defendant, on September seventh, answered: "Now, in regard to the property at Austin's. I left the horse at Austin's. The other articles are at Austin's, all but one wagon. That is at Barnes' Corners. I took possession of the goods. Austin said he would give them up if called for. I thought it cheaper to leave the horse there than to remove it elsewhere. Write me if you want to meet me there. I will get the property in your hands very quick."

On the eighth of September the plaintiff, who was then living at Pulaski, Oswego county, wrote from there to the defendant, saying that he understood he, the sheriff, went to Pinckney to H. S. Austin's to get some property on an execution delivered to him by Mr. Kearns, and he had heard that Austin did not give it up, and he wanted to know what there was of it and where the property was. To this the defendant replied, that Austin did not refuse to give up the property, and that he, the defendant, had taken possession of the property, and had it in his possession some time, and wanted to know where he should leave it. To this the plaintiff, as he testifies, replied, "I wrote him to let Waterman, at Barnes' Corners, get the property and take it over to John Gregg's in Rodman;" and he further testifies, "I supposed it was there, and it was all right just as he said." The property was not delivered to Waterman, and on October 7, 1891, Mr. Kearns writes the defendant: "My client,

Robt. E. Gregg, is at Pulaski and is busy. You let Mr. Sylvester Waterman, of Barnes' Corners, have the property. Write him or deputize him, and he will get it together for Gregg and myself. I don't want it in the possession of Austin any longer. I will see that your fees as you write me are paid. Waterman being handy there can take care of it better. Please write him at once to take the property. Give him a list of it. You will find it in the execution I sent you. Please don't delay the matter. I want to sue the sureties, the bail on the bond he gave when he took the property."

On the eighth of October the defendant writes to Mr. Waterman as follows :

" Mr. WATERMAN, DEAR SIR — Some time ago I took some prop-- erty of one Harlow Austin, belonging to Robert E. Gregg. Mr. Thomas F. Kearns is Gregg's lawyer. He writes me that said Gregg wanted you to get together the property, viz. : One black mare, one pair bob sleighs, one four-spring wagon, one three-spring wagon, one cutter, two buffalo robes, all of which is at said Austin's in your town, except four-spring wagon, which is at Michael Ragen's, Barnes' Corners. I have had the same in my possession for eight weeks. Now, get the same together for said parties. You will see I appoint you deputy sheriff for the same work. When you do the work let Mr. Gregg and T. F. Kearns know, and charge the same to them. Let me hear from you.

" Your truly,

" JOHN P. MURPHY,

" *Sheriff Lewis Co.*"

" LOWVILLE, *Oct. 8th,* 1891.

" I hereby appoint Sylvester Waterman, of the town of Pinckney, Lewis Co., N. Y., special deputy sheriff to do the work spoke of in the paper attached.

" JOHN P. MURPHY,

" *Sheriff Lewis Co., Lowville.*"

Upon the same day the defendant writes Mr. Kearns, " Now, I have done as you requested, appointed W. S. Waterman to get the property together. Now, how or what shape can I return execution as it now stands. Let me hear from you." To this, Kearns, on October ninth, replies : " Yours at hand. You return the execution

to Clk's office as execution directs with the following indorsement made thereon:. 'The within execution levied upon the following goods and chattels, the property of defendant, this          day of        , 1891, and delivered to W. S. Waterman for the defendant herein' (set out list of property) ; 'the said execution is returned also as being *nulla bona* as to the collection of the costs therein.' Put this indorsement on and sign and return. I expect to be at Lowville, and I will pay your fees, $4.63, before long, or will have them sent you. Indorse list of the property on execution, etc., so it will show what you have turned over to Waterman."

On the tenth of October the defendant indorsed on the execution and signed the following return : " The within execution levied upon the following goods this 25th day of July, 1891, and delivered to W. S. Waterman for the defendant herein, namely (specifying property in question). The said execution is returned also as *nulla bona* as to the collection of the costs therein this 10th day of October, 1891." The execution with this return was filed by the defendant in the clerk's office on the 12th of October, 1891.

Mr. Waterman, within a day or two after he received the defendant's letter, went to Austin's and to Ragen's, but could not find any of the property. He saw Austin, and the plaintiff offered to prove that he asked him for the property and its whereabouts and that Austin would not tell him, but upon the objection of the defendant it was ruled out and plaintiff excepted. The next day Waterman wrote the defendant that he had been to Austin's and could not find any of the property. He never did receive it, and the defendant took no steps to cause a delivery to him.

There is evidence tending to show that in the fall of 1891 it was in the power of defendant to have delivered the property. In the spring of 1892 the plaintiff called on the defendant to deliver it and asked him where it could be found, but the defendant did not deliver or tell where it was, and took the position that after the return of the execution he had nothing further to do with it. This action was soon after commenced.

The verdict seems to have been directed upon the theory that the defendant, having given the direction to Waterman at the request of the plaintiff, and made the return in form directed by the plaintiff's

attorney, was absolved from any further responsibility in the matter. Exception was duly taken to the direction of the verdict, and also to the denial of the request of the plaintiff to go to the jury.

*Thomas F. Kearns*, for the appellant.

*Merrell, Ryel & Merrell*, for the respondent.

MARTIN, J. :

The uncontradicted evidence in this case disclosed that the plaintiff's attorney delivered to the defendant, who was the sheriff of Lewis county, an execution in an action of replevin by which he was directed to take possession of and deliver to the plaintiff certain articles of personal property mentioned therein, if they could be found in his county, and collect his fees, together with ninety-two dollars and sixty-seven cents, costs. If they could not be found, then to collect the sum of $142, damages, with his fees and the costs mentioned. In pursuance of this execution the defendant took possession of the property mentioned, and left it with the person in whose possession it was found.

The execution was delivered to the defendant July 23, 1891, and on the twenty-fifth of the same month he took possession of the property under it. On the twenty-seventh he wrote the plaintiff's attorney in the action in which the execution was issued, stating he had possession of the property and asking the attorney to direct him what to do with it, to which the attorney subsequently replied that his client was out of the county, that he expected to see him soon and would then write him fully.

On the seventh of September the attorney wrote the defendant that he had a letter from his client saying that Austin, in whose hands the property was left, would not give it up. To this the defendant, on the same day, replied that he left the horse and other articles at Austin's, except one wagon, which was at Barnes' Corners; that he had taken possession of the goods and Austin would give them up if called for; that he thought it cheaper to leave the horse there than to remove it elsewhere, and then added : "Write me if you want to meet me there. I will get the property in your hands very quick."

On the next day the plaintiff wrote the defendant in regard to the

property, stating that he had heard that Austin would not give it up, to which the defendant replied that Austin did not refuse to give up the property; that he, the defendant, had taken possession of it, and had had it in his possession some time, and wanted to know where he should leave it. To this the plaintiff testified that he replied to let Waterman at Barnes' Corners get the property and take it over to John Gregg. On October seventh the plaintiff's attorney wrote the defendant to let Sylvester Waterman of Barnes' Corners have the property; to write him and deputize him to take the property, and he would get it together for Gregg and himself. On the next day the defendant complied with his request by writing Mr. Waterman the facts in regard to the property, and by making him a special deputy to take the property in question for the plaintiff.

On the same day he wrote the attorney, stating what he had done, and asked for instructions as to what return to make upon the execution then in his hands. In reply, the plaintiff's attorney directed him as to the return he should make and indorse upon the execution, and he made it accordingly. The proof also showed that Waterman did not obtain the property.

About five months after the return of the execution the plaintiff's attorney again asked the defendant to take possession of the property, to which the defendant in substance replied that he did not see how he could get the property at that time, because he then had no execution in his hands, and stated that if he was to do anything more he should have some papers upon which to take it. No new execution was issued to him, nor did the plaintiff give him any authority as sheriff to take possession of the property, except such as was given by the execution which had already been returned. There was evidence tending to show that neither the plaintiff nor his attorney desired the property, but that they were seeking to obtain a cause of action either against the sheriff or the sureties upon the undertaking given in the replevin action.

A reading of the evidence in this case renders it manifest that the sheriff sought diligently to perform his duty to the plaintiff; that he persistently endeavored to have the plaintiff, or his attorney, or some one authorized by them come to the county to take possession of the property, but failed, as both the plaintiff and his attor-

ney neglected to do so or to provide any way for the defendant to deliver the possession of the property, until the letter in which the defendant was asked to deputize Waterman who would obtain possession of the property for them. Thus, the defendant in all he did was governed by the directions of the plaintiff or his attorney, and sought to perform every duty which he owed them in the matter. Under such circumstances it does not seem to me that the plaintiff was entitled to recover in this action.

That a party, in whose favor process is issued, may give such directions to the sheriff as will not only excuse him from his general duty, but bind him to the performance of what is required of him, there is, I think, no doubt. Both the process and the law which convey authority under it, are for the benefit of the party in whose behalf it is issued, and it is a general rule that a man may dispense with an entire law which is intended for his aid or protection. It follows that he may qualify it, to a greater or less extent, according to his discretion. This is substantially the language of DAVIES, J., in *Root* v. *Wagner* (30 N. Y. 1, 17.) (See, also, *Douglass* v. *Haberstro,* 88 id. 611; *Crouse* v. *Bailey,* 32 N. Y. St. Repr. 395; *Corning* v. *Southland,* 3 Hill, 552; *Mickles* v. *Hart,* 1 Den. 548.)

As in this case it is quite obvious that the defendant acted in accordance with the directions of the plaintiff's attorney and in good faith, I think, that as a matter of law, he was protected in his action, and the court was justified, under the evidence, in directing a verdict for the defendant. (*Robinson* v. *Brennan,* 11 Hun, 368, 370.)

I have examined the various rulings to which attention has been called by the appellant in his brief, and find in them no error which would justify us in reversing the judgment. Thus I am led to the conclusion that the judgment appealed from should be affirmed.

HARDIN, P. J., concurred.

MERWIN, J. (dissenting):

In considering the question whether the verdict for the defendant was properly directed, we are required to take that view of the evidence which is most favorable to plaintiff.

Under the execution the defendant took possession of the property, and it was then his duty to deliver it to the plaintiff or to his order. The plaintiff in September gave him directions where and

how to deliver it, but they were not followed. If the defendant failed to deliver as the writ required, he was liable to the plaintiff for the damages sustained. (Code, § 102.)

The statement in the return that the property was delivered to W. S. Waterman for the defendant therein was not conclusive as to the fact of such delivery, although the form of the return was dictated by the attorney. The evidence would authorize the finding that the attorney, when he dictated this return, supposed that the property had in fact been delivered by the sheriff to Mr. Waterman, and concerning this the sheriff was in a position to know more than the attorney did. If the attorney on this subject acted under a mistake, it does not conclude the plaintiff any more than giving a receipt would. It was open to explanation. The rights of the sheriff as to his ability to deliver were not affected, as upon the evidence the jury might infer that the sheriff still had control over the property.

But it is argued that the defendant, at the request of the plaintiff, in substance deputized Mr. Waterman to get the property, and that thereupon the defendant ceased to be in any way liable whether Waterman found the property or not.

The process was not placed in the hands of Waterman. That was kept by the defendant and returned. Waterman and the plaintiff had, therefore, specially the right to rely on the correctness of the statements of the defendant in his letter of October eighth, that the property was in his possession and was all at Austin's, except one article at Ragen's. Those statements not being correct, can the defendant still say that he is released from all responsibility because at the request of plaintiff he appointed Waterman to get the property together?

The situation was somewhat peculiar. The property was in one part of the county and the sheriff was in another, while the plaintiff lived in another county and the plaintiff's attorney in still another. The property had been for sometime, as the defendant stated, in his possession though not in fact transported from the place where it was taken originally by the sheriff, and he wanted to know what to do with it. He had upon taking it left it in the custody of Austin, of whom it is apparent that the plaintiff and his attorney were somewhat suspicious. Prior to October eighth the plaintiff had the right to call on the defendant for actual delivery

of the property to him or his agent. And the question is whether it was the understanding of the parties that the giving of the direction to Waterman should relieve the defendant of all further responsibility, without reference to whether or not there should be actual delivery to Waterman, or, on the other hand, was it the understanding and expectation that the defendant would deliver or cause to be delivered the property to Waterman, and upon such delivery the claim be satisfied? Neither of these propositions should upon the evidence be affirmed as matter of law.

The question is not whether the defendant is liable for the acts or omissions of Waterman and, therefore, within the purview of the cases cited by the learned counsel for the defendant. The question is back of that, and is whether the defendant has been discharged from the liability which was upon him just prior to the arrangement as to Waterman. Whether there was an arrangement to that effect, or whether there was a waiver by plaintiff of an actual delivery, were questions of fact for the jury to pass upon.

If these views are correct, it follows that the case should have been submitted to the jury and a new trial should, therefore, be granted.

Judgment affirmed, with costs.